Suzanne Bostrom (AK Bar No. 1011068)
Brook Brisson (AK Bar No. 0905013)
Bridget Psarianos (AK Bar No. 1705025)
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
sbostrom@trustees.org
bbrisson@trustees.org
bpsarianos@trustees.org

*Attorneys for Movant Intervenor-Defendants*
*Northern Alaska Environmental Center,*
*Alaska Wilderness League, Environment*
*America, and Sierra Club*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>          Plaintiff,<br><br>and<br><br>ALASKA OIL AND GAS ASSOCIATION,<br><br>          Intervenor-Plaintiff,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT, *et al.*,<br><br>          Defendants. | Case No. 3:24-cv-00144-SLG |

**MOTION TO INTERVENE BY NORTHERN ALASKA ENVIRONMENTAL CENTER, ALASKA WILDERNESS LEAGUE, ENVIRONMENT AMERICA, AND SIERRA CLUB**
**(Fed. R. Civ. P. 24)**

Pursuant to Federal Rule of Civil Procedure 24(a)(2) and (b), the Northern Alaska Environmental Center, Alaska Wilderness League, Environment America, and Sierra Club (collectively, Movants) move to intervene as defendants in this litigation challenging the U.S. Bureau of Land Management's (BLM) adoption of regulations governing the management and protection of the National Petroleum Reserve–Alaska (Reserve). Management and Protection of the National Petroleum Reserve in Alaska: Final Rule, 89 Fed. Reg. 38,712 (May 7, 2024) [hereinafter Regulations].

Defendants take no position on the motion. Counsel for Plaintiff and Intervenor-Plaintiff stated that they will review the motion once filed and determine their positions at that time.

## INTRODUCTION

This case is one of five lawsuits challenging BLM's adoption of the Regulations: *Voice of the Arctic Iñupiat v. BLM*, Case No. 3-24-cv-00136-SLG; *ConocoPhillips Alaska, Inc. v. Department of the Interior*, Case No. 3-24-cv-00142-SLG; *North Slope Exploration, LLC v. U.S. Department of the Interior*, Case No. 3-24-cv-00143-SLG; *State of Alaska v. BLM*, Case No. 3-24-cv-00144-SLG; and *North Slope Borough v. BLM*, Case No. 3-24-cv-00145-SLG. The five lawsuits raise similar claims. Plaintiffs in these cases raise broad arguments challenging BLM's authority to protect wildlife, subsistence, and

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 2 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 2 of 18

other surface values in the Reserve and the agency's ability to address the harmful impacts of oil and gas in the Reserve. *See, e.g.*, Compl. for Declaratory Jmt. & Inj. Relief at 30–36, ECF No. 1 [hereinafter State Compl.]; Compl. in Intervention at 18–26, ECF No. 19 [hereinafter AOGA Compl.]. Movants seek to intervene to defend BLM's actions in adopting the Regulations and to ensure it is meeting its statutory obligations to protect wildlife and other values and mitigate the impacts of oil and gas activities in the Reserve. Movants seek to intervene in all five lawsuits and are filing motions in each concurrently.

This Court should grant Movants' motion to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) because Movants satisfy the four-factor test. First, the motion is timely, coming early in the litigation and causing no prejudice to any party. Second, Movants have a long-standing interest in protecting the exceptional ecological, wildlife, and cultural values of the Reserve from oil and gas activities, and in seeking to protect this area for scientific, subsistence, and recreational use and enjoyment. Third, the action may impair Movants' interests because oil and gas leasing and activities have long-term and severe impacts on the land and resources that harm Movants' interests and uses of the Reserve. Fourth and finally, Movants' interests in protecting the scenic, wildlife, and cultural values of the Reserve are distinct from Defendants' interests in managing the Reserve; as a result, Defendants may not adequately represent Movants' interests. Accordingly, this Court should grant the motion for intervention as a matter of right.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                    Page 3 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 3 of 18

In the alternative, Movants satisfy the test for permissive intervention under Federal Rule of Civil Procedure 24(b) because the motion is timely and because Movants' defenses raise common questions of law and fact.

BACKGROUND

At over 23 million acres, the Reserve is the largest single block of federal public land in the United States. The Reserve provides rich habitat for caribou, grizzly and polar bears, wolves, fish, and a range of migratory birds and waterfowl, including species listed as threatened under the Endangered Species Act. 89 Fed. Reg. at 38,714, 38,736–37; Management and Protection of the National Petroleum Reserve in Alaska: Proposed Rule, 88 Fed. Reg. 62,025, 62,029–30 (Sept. 8, 2023). It is home to the Western Arctic and Teshekpuk Lake Caribou Herds, which provide key subsistence resources to numerous communities in the Reserve and across northwest Alaska. 89 Fed. Reg. at 38,714; 88 Fed. Reg. at 62,030.

The Naval Petroleum Reserves Production Act (Reserves Act) is one of the primary statutes governing BLM's management of the Reserve. 42 U.S.C. §§ 6501–6507. Although the Reserves Act directs BLM to carry out an oil and gas leasing program, it also mandates that BLM adopt mitigation measures to protect the ecological and other values of the Reserve. 42 U.S.C. §§ 6503(b), 6504(a), 6506a(a)–(b). The Reserves Act provides that BLM "shall include or provide for such conditions, restrictions, and prohibitions" on oil and gas activities as it determines necessary to protect the Reserve's surface resources. *Id.* § 6506a(b). Congress also instructed the Secretary of the U.S.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 4 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 4 of 18

Department of the Interior (Secretary) to designate any areas containing "significant subsistence, recreational, fish and wildlife, or historical or scenic value" as Special Areas. *Id.* § 6504(a). The Secretary is required to ensure "maximum protection" for surface values within designated Special Areas. *Id.*

Based on this authority, the Secretary previously designated multiple Special Areas to ensure maximum protection of important environmental, fish and wildlife, subsistence, and historical or scenic values. 42 U.S.C. § 6504(a); *see, e.g.*, National Petroleum Reserve in Alaska Designation of Special Areas, 42 Fed. Reg. 28,723 (June 3, 1977); 88 Fed. Reg. at 62,027. Areas in the Reserve, such as Teshekpuk Lake, the Colville River, and the Utukok Uplands, have been recognized for decades as Special Areas because of their importance to wildlife. 42 Fed. Reg. 28,723. When originally designating these Special Areas, the Secretary explained that "steps to minimize adverse impacts on existing resources values will be required and implemented" for proposed activities in Special Areas. *Id.* Over the years, the boundaries of the Special Areas have been expanded and the Secretary has designated new Special Areas, including Kasegaluk Lagoon and Peard Bay. *See, e.g.*, Designation of Additions to Special Areas in National Petroleum Reserve-Alaska; Alaska, 64 Fed. Reg. 16,747 (Apr. 6, 1999); Designation of Addition to Special Areas in National Petroleum-Alaska; Alaska, 70 Fed. Reg. 9,096 (Feb. 24, 2005); 88 Fed. Reg. at 62,027.

Under the management plans for the Reserve adopted in 2013 and 2022, known as Integrated Activity Plans (IAP), BLM closed approximately half of the Reserve to leasing

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                          Page 5 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

and oil and gas activity because of the need to protect sensitive areas like Teshekpuk Lake. *See* 89 Fed. Reg. at 38,715–16, 38,742. Those IAPs also restricted new infrastructure in areas of particular importance for nesting, breeding, and molting waterfowl, as well as to protect critical calving and insect relief areas for the Teshekpuk Lake and Western Arctic Caribou Herds. *See id.*

Consistent with the Reserves Act and its protective mandates, as well as its historical practices, BLM adopted the Regulations to more comprehensively guide its management of the Reserve. 88 Fed. Reg. at 62,026. For example, the Regulations update BLM's existing regulations to include all five designated Special Areas and incorporate the leasing and infrastructure provisions that have largely been in place since 2013. *See* 89 Fed. Reg. at 38,712, 38,716. They also set out the standards and procedures BLM will follow to ensure it is meeting its obligations to protect environmental, fish and wildlife, historical, and scenic resources from adverse effects and to assure maximum protection for significant values in Special Areas, as mandated by the Reserves Act. *Id.* at 38,712.

ARGUMENT

## I.  MOVANTS MEET THE TEST TO INTERVENE AS A MATTER OF RIGHT.

This Court applies a four-part test to determine whether intervention as of right is warranted under Civil Rule 24(a)(2), which considers: (1) the timeliness of the motion, (2) whether "the applicant has a significant protectable interest relating to the property or transaction" at issue, (3) whether "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest," and (4) whether "existing

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                    Page 6 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 6 of 18

parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Courts are "guided primarily by practical and equitable considerations" and apply the requirements broadly in favor of intervention. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). As the Ninth Circuit has explained, a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)). Indeed, intervention should be granted to "as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Movants satisfy all four factors to intervene as a matter of right.

### A.      Movants' Motion Is Timely.

The timeliness of a motion to intervene is measured by considering "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Alisal Water Corp.*, 370 F.3d at 921 (quoting *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)). A motion to intervene is timely when made at the early stages of the proceedings. *Citizens for Balanced Use*, 647 F.3d at 897.

This motion is timely because it is made at the early stage of proceedings, prior to Defendants filing their answer and providing the administrative record. Accordingly, no

parties will be prejudiced by Movants' intervention. *See Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993) (noting that the motion to intervene was timely because it was filed before the defendant had filed its answer), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. In sum, the motion is timely, and the first intervention factor is satisfied.

**B.      Movants Have Significant, Legally Protectable Interests in the Reserve.**

The requirement that a movant show a protectable interest is met when "(1) the applicant asserts an interest that is protected under some law, and (2) there is a relationship between the applicant's legally protected interest and the plaintiff's claims." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (cleaned up) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). Movants are not required to establish a specific legal or equitable interest. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). The focus of this inquiry is on the "property or transaction that is the subject of the lawsuit," not "the underlying legal claim." *Wilderness Soc'y*, 630 F.3d at 1178. An applicant generally demonstrates a protectable interest if "it will suffer a practical impairment of its interests as a result of the pending litigation." *Cal. ex. rel. Lockyer v. United States* (*Lockyer*), 450 F.3d 436, 441 (9th Cir. 2006); *see also Donnelly*, 159 F.3d at 410 (explaining an interest is related to the action when "resolution of the plaintiff's claims actually will affect the applicant").

Movants satisfy this requirement because they and their members have significant, well-established, and long-standing interests in preserving and enjoying the resources and

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                              Page 8 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

values of the Reserve for aesthetic, recreational, scientific, subsistence, and cultural purposes. Movants' staff and members live in and regularly visit the Reserve for recreation, economic, scientific, wildlife viewing, subsistence, and photography interests. Brown Decl. ¶¶ 10, 19–20; Dabney Decl. ¶¶ 21–23; Miller Decl. ¶¶ 22–23, 31; Montgomery Decl. ¶¶ 15; Ritzman Decl. ¶¶ 26–37; Winsor Decl. ¶¶ 3, 5–10.

Numerous laws protect these interests and the Reserve's natural values. *See, e.g.*, 42 U.S.C. §§ 6503(b), 6504(a), 6506a(b); 16 U.S.C. § 3120 (Alaska National Interest Lands Conservation Act); 16 U.S.C. §§ 1531–1544 (Endangered Species Act). Protection of an area's wilderness values, wildlife, and habitat are recognized as protected interests for purposes of intervention. *Citizens for Balanced Use*, 647 F.3d at 897–98; *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992).

Movants' missions are focused on protecting lands and waters, and all have programs that focus specifically on protecting the Reserve. Dabney Decl. ¶¶ 4, 6–7, 9; Miller Decl. ¶¶ 5, 8, 10; Montgomery Decl. ¶¶ 3–4, 7, 9–13; Ritzman Decl. ¶¶ 6–7, 13. Movants and their members have worked for years, and some for decades, to protect the Reserve and the wildlife that depend on it from the harmful impacts of oil and gas activities. Dabney Decl. ¶¶ 9–16; Miller Decl. ¶¶ 10–21; Montgomery Decl. ¶¶ 9–13; Ritzman Decl. ¶¶ 12–25. Movants and their members have engaged in decision-making processes related to the management plans for the Reserve, oil and gas authorizations like

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                Page 9 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 9 of 18

ConocoPhillips' Willow project, and the Regulations. Dabney Decl. ¶¶ 9–16; Miller

Decl. ¶¶ 10–21; Montgomery Decl. ¶¶ 9–13; Ritzman Decl. ¶¶ 12–25; Winsor Decl. ¶ 12.

Many of the Movants have also engaged in litigation challenging past decisions related to

oil and gas in the Reserve to ensure BLM fully complies with the law and meets the

protective mandates in the Reserves Act. *See infra* Argument Part I.D.

This lawsuit seeks to invalidate BLM's decision to adopt Regulations directed at

protecting important wildlife, habitat, and other values in the Reserve. State Compl. at

38; AOGA Compl. at 31. BLM took these actions to ensure it is meeting its statutory

obligations to mitigate the impacts of oil and gas and provide maximum protection for

important values in Special Areas. 89 Fed. Reg. at 38,712; *see also Nw. Forest Res.*

*Council*, 82 F.3d at 837–38 (stating public interest groups may intervene when groups

"were directly involved in the enactment of the law or in the administrative proceedings

out of which the litigation arose"). Movants engaged in the public process related to the

Regulations, as well as other decision-making processes in the Reserve, to ensure BLM

meets its legal obligations to protect Special Areas and address the impacts of oil and gas.

Dabney Decl. ¶¶ 9–10, 16–18; Miller Decl. ¶¶ 8, 10, 12, 20–21, 25; Montgomery Decl.

¶¶ 12–14; Ritzman Decl. ¶¶ 15–18, 20, 22, 25. As such, the current lawsuit is related to

and implicates the protections Movants have long worked to see implemented and

maintained in the Reserve.

In sum, Movants' significant use of and connection to the Reserve, their sustained

advocacy to protect it from harmful oil and gas activities, and their efforts to require

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 10 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 10 of 18

compliance with protective mandates in the law all demonstrate that they have significant, legally protected interests in the Reserve, satisfying the second intervention factor.

### C. A Ruling in Plaintiff's and Intervenor-Plaintiff's Favor May Impair or Impede Movants' Ability to Protect Their Interests.

The third factor is met if, as a practical matter, the action may impair or impede the movant's ability to protect its interests. FED. R. CIV. P. 24(a)(2). The second and third factors are closely related, and if the second factor is met — that the applicant has a protectable interest — courts often find that the third factor is also satisfied. *Lockyer*, 450 F.3d at 442. The bar is not high, asking only "whether the [action] 'may' impair rights 'as a practical matter' rather than whether the [disposition] will 'necessarily' impair them." *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002) (quoting FED. R. CIV. P. 24(a)(2)). In determining whether the action may impair an applicant's interests, courts look to the relief requested. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

The interest-impairment factor is satisfied here. This case threatens Movants' long-standing interests in protecting the Reserve's wildlife, fish, and habitat and in preventing harm from oil and gas activities. Plaintiff and Intervenor-Plaintiff seek a declaratory judgment and injunctive relief from this Court invalidating BLM's Regulations governing management of the Reserve and the protection of designated Special Areas. State Compl. at 38; AOGA Compl. at 31. The Regulations are intended to

ensure BLM meets its obligations under the Reserves Act to mitigate the impacts of oil and gas activities in the Reserve and provide maximum protection for surface resources in designated Special Areas. 89 Fed. Reg. at 38,712. Oil and gas activities in the Reserve are having and will continue to pose direct and indirect impacts on the Reserve and its resources, harming Movants' use of the Reserve and ability to protect the wildlife, habitat, and other values they use and enjoy. Brown Decl. ¶¶ 16, 19–23; Dabney Decl. ¶¶ 14, 21–23; Miller Decl. ¶¶ 22–24, 26–30; Montgomery Decl. ¶¶ 15–18, 20–21; Ritzman Decl. ¶¶ 26, 28, 33–34, 38–44; Winsor Decl. ¶¶ 12–15. Courts recognize that these types of impacts may impair protected interests. *See, e.g.*, *Sagebrush Rebellion, Inc.*, 713 F.2d at 528 (recognizing a decision overturning protections would impair intervenor's interest in birds and their habitat); *Nat. Res. Def. Council v. Lujan*, 768 F. Supp. 870, 879 (D.D.C. 1991) (noting oil and gas development on Coastal Plain may "damage [its] wilderness, recreational, and subsistence values").

This case also implicates matters at issue in pending litigation brought by several Movants related to ConocoPhillips' Willow oil development project. *Sovereign Iñupiat for a Living Arctic v. BLM* (*SILA II*), 2023 U.S. Dist. LEXIS 201981 (D. Alaska Nov. 9, 2023); *Sovereign Iñupiat for a Living Arctic v. BLM*, Case No. 23-3627 (9th Cir. argued Feb. 5, 2024). One of the issues in that matter relates to the scope of BLM's authority to limit oil and gas activities in the Reserve. *SILA II*, 2023 U.S. Dist. LEXIS 201981, at *12–14, *18–19. Here, Plaintiff and Intervenor-Plaintiff seek to limit the scope of that authority under the Reserves Act and to invalidate the Regulations, which are aimed at

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 12 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 12 of 18

ensuring BLM is meeting its legal obligations to protect important values in the Reserve. State Compl. at 33–38; AOGA Compl. at 19–31. A decision in this case could affect Movants' interests in maintaining the integrity of BLM's authority in that case and more broadly.

In sum, Movants demonstrated that their interests will be impaired, and the third intervention factor is satisfied.

### D.    Defendants May Not Adequately Represent Movants' Interests.

To satisfy the fourth factor, a movant need only show that representation may be inadequate; "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). In considering the adequacy of representation, courts consider whether an existing party "will undoubtedly make all of the intervenor's arguments," whether the party "is capable and willing to make such arguments," and "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion, Inc.*, 713 F.2d at 528. The "tactical similarity" of the parties does not ensure adequate representation; courts instead compare the interests of the party with the interests of the applicant. *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (citation omitted); *see also Citizens for Balanced Use*, 647 F.3d at 899 (explaining the government's general representation of the public interest does not necessarily represent a particular group's interests despite sharing the same litigation posture). Questions about the adequacy of representation should be resolved "in

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                    Page 13 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 13 of 18

favor of intervention." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011).

Movants meet their minimal burden of showing the potential inadequacy of representation. While Movants' immediate objective is currently shared with Defendants — *i.e.*, upholding the Regulations — the Defendants' and Movants' interests in the Reserve are far from identical. Movants' interests are in the preservation of the scenic, wildlife, and cultural values of the Reserve now and into the future. *See supra* Argument Part I.B. In contrast, BLM's interest is in implementing the multiple directives in the Reserves Act, which includes implementation of an oil and gas program. The oil and gas program and the impacts of oil development directly undermine Movants' long-standing interests in protecting the Reserve. Brown Decl. ¶¶ 19–24; Dabney Decl. ¶¶ 9–14, 24; Miller Decl. ¶¶ 10, 12, 15, 18–19, 31–32; Montgomery Decl. ¶¶ 9–10, 22–23; Ritzman Decl. ¶¶ 14, 19–20, 22–24, 45–46; Winsor Decl. ¶¶ 12–15. Defendants, therefore, have different and divergent interests from Movants, and the presumption of adequate representation does not apply. *Trbovich*, 404 U.S. at 538–39; *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24; *WildEarth Guardians v. U.S. Forest. Serv.*, 573 F.3d 992, 996 (10th Cir. 2009).

Additionally, the present and historical adversarial relationship between Movants and Defendants demonstrates a divergence of interests over the management and protection of the Reserve. As explained above, many of the Movants are currently litigating issues regarding the scope of BLM's authority to limit oil and gas activities in

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                      Page 14 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 14 of 18

the Reserve, which is also at issue in this lawsuit. *Supra* Argument Part I.C; State Compl. at 30–33; AOGA Compl. at 18–25. Movants have also been involved in past litigation concerning BLM's management and oil and gas decisions in the Reserve. *See, e.g.*, *Sovereign Iñupiat for a Living Arctic v. BLM*, 555 F. Supp. 3d 739 (D. Alaska 2021) (challenging the Willow project); *Native Vill. of Nuiqsut v. BLM*, 9 F.4th 1201 (9th Cir. 2021) (challenging exploration authorization); *N. Alaska Envtl. Ctr. v. U.S. Dep't of the Interior*, 983 F.3d 1077 (9th Cir. 2020) (challenging lease sale); *The Wilderness Soc'y v. Salazar*, 603 F. Supp. 2d 52 (D.D.C. 2009) (challenging Northeast Planning Area IAP); *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969 (9th Cir. 2006) (challenging Northwest Planning Area IAP); *Nat'l Audubon Soc'y v. Kempthorne*, 2006 U.S. Dist. LEXIS 110152 (D. Alaska Sept. 25, 2006) (challenging Northeast Planning Area IAP). In light of this adversarial history spanning more than 18 years, there is a strong likelihood Defendants will not adequately represent Movants' interests.

Given Movants' distinct and long-standing goals of protecting the Reserve, they will also potentially offer different arguments than Defendants and contribute unique perspectives to the arguments and proceedings in this case. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24 (recognizing differences in interests are sufficient to support intervention and not requiring a specific showing that there will be differences in strategy). In sum, Defendants may not adequately represent Movants' interests, and the fourth intervention factor is satisfied.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                    Page 15 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 15 of 18

## II. MOVANTS SHOULD BE GRANTED PERMISSIVE INTERVENTION.

If this Court determines that one or more of the Movants do not satisfy the test for intervention as of right, this Court should grant them permissive intervention. Civil Rule 24(b) permits permissive intervention when (1) a movant's claim or defense poses questions of law or fact in common with the existing action and (2) the motion is timely and will not delay the proceeding or prejudice the parties. FED. R. CIV. P. 24(b)(1)(B), (3). The test for permissive intervention imposes an even lower burden on movants than the test for intervention as of right because it eliminates the requirements relating to interests and adequacy of representation. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108–09 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1178–79, 1180. A court has broad discretion in granting permissive intervention and, like intervention as of right, permissive intervention should be liberally granted. *See id*. at 1110–11.

Movants meet this standard. First, Movants intend to respond directly to the Plaintiff's and Intervenor-Plaintiff's challenges to the lawfulness of the Regulations— *i.e.*, they intend to assert common defenses of law and fact with the existing action. Movants' interests are in upholding BLM's legal obligations to protect Special Areas and ensuring there is adequate mitigation to address the impacts of oil and gas. *See supra* Argument Parts I.B, I.D. Movants plan to assert defenses of law and fact consistent with that and the arguments at issue in this case. Additionally, for the reasons discussed above, this motion is timely and intervention will not prejudice any parties or cause a delay in

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                    Page 16 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 16 of 18

the proceedings. *See supra* Argument Part I.A. Accordingly, if the Court finds that any group does not satisfy the test for intervention as of right, permissive intervention is warranted.

CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court grant their motion to intervene as of right or, in the alternative, permissive intervention.

Respectfully submitted this 11th day of September, 2024.

>  s/ Suzanne Bostrom
> Suzanne Bostrom (AK Bar No.  1011068)
> Brook Brisson (AK Bar No. 0905013)
> Bridget Psarianos (AK Bar. No 1705025)
> TRUSTEES FOR ALASKA
>
> *Attorneys for Movant Intervenor-Defendants*
> *Northern Alaska Environmental Center et al.*

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene          Page 17 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 17 of 18

**CERTIFICATE OF SERVICE**

I certify that on September 11, 2024, I caused a copy of Northern Alaska Environmental Center et al.'s MOTION TO INTERVENE, supporting documents, and [PROPOSED] ORDER to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system, which will send electronic notification of such filings to the attorneys of record in this case, all of whom are registered with the CM/ECF system.

s/ Suzanne Bostrom<br>Suzanne Bostrom

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.4(a)(3), I certify that this motion complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) because it contains 4,061 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4).

s/ Suzanne Bostrom<br>Suzanne Bostrom

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 18 of 18
*State of Alaska v. Bureau of Land Mgmt.*, Case No. 3:24-cv-00144-SLG

Case 3:24-cv-00144-SLG   Document 23   Filed 09/11/24   Page 18 of 18